IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

COREY HILL                               )
and MELINDA HILL,                        )
                                         )
            Plaintiffs,                  )      TC-MD 230057R
                                         )
      v.                                 )
                                         )
LINN COUNTY ASSESSOR,                    )
                                         )
            Defendant.                   )      **DECISION**

Plaintiffs appealed Defendant's Board of Property Tax Appeals (BOPTA) orders, mailed

February 22, 2023, regarding tax accounts 238721, 238705, 238713, and 238697 (subject

property) for the 2022-23 tax year.  The BOPTA orders sustained Defendant's tax roll collective

value of the subject property at $2,318,440.  A trial was held remotely on July 17, 2023.  Steven

Anderson (Anderson), appraiser and real estate agent, appeared and testified on behalf of

Plaintiffs.  Natalie Bauer (Bauer), county appraiser, appeared and testified on behalf of

Defendant.  Plaintiffs' exhibits 1 and Defendant's exhibits A to F were received into evidence

without objection.

## I.  STATEMENT OF FACTS

The subject property is a 6.09-acre mobile home park located 200 feet south of Highway

20 on the eastern end of Sweet Home, Oregon.  Anderson testified that the park has no amenities,

dayroom, pool, manager's office, grocery store, gas station or restaurant.  He testified that there

is significant deferred maintenance and considers the property a class "C" property.  Anderson

testified that he walked the property and counted 109 spaces of which 69 were under lease as of

the assessment date.  He testified that the majority of park consists of "single wide" spaces with

13 recreational vehicles and travel trailers, whereas the modern standard for the market area calls

DECISION  TC-MD 230057R                                                                          1

for "double wide" spaces. Anderson testified that Plaintiffs told him that there are four main water lines of which two were recently replaced at a cost of $66,000 and the other two are currently at or near failure and will require replacement at an estimated cost of $71,000. Anderson testified that the water line problem accounts for a significant portion of the park's repair and water expenses and Plaintiffs told him they do not have resources to immediately fix the problem.

Anderson considered the cost, sales comparison, and income approaches to value. He rejected the cost approach as inapplicable to mobile home parks. He also did not consider the sales comparison approach as an indicator of value because there "would be too many adjustments made between prices based on location, housing stock, amenities." (Ex 1 at 2.) He used the sales comparison approach only to develop a capitalization (CAP) rate and primarily relied on the income approach. Anderson selected two recent sales; a 108-unit class "B" mobile home park on 14.95 acres that sold for $13.8 million in December 2021, and a 44-unit class "B" mobile home park on 2.77 acres that sold for $3.465 million in November 2021. The CAP rates for those sales at 3.9 and 10.55 percent were considered along with a conversation with Bauer where "she considered" the rate to be 8.61. Anderson also considered a current listing of a 1.84-acre, 34-unit, park in Sweet Home, advertised at an 8.7 percent CAP rate. Anderson concluded that a CAP rate for the subject property should be 7 percent.

Anderson presented the actual income and expenses for the subject property from 2017 through 2022. (Ex 1 at 35, 38, 41, 44, 72, and 104.) During those years the gross income ranged from $218,061 to $252,571 and average expenses, including water, sewer, and garbage were approximately 71 percent of gross income leaving an average net operating income (NOI) of

$69,211.[1]

Bauer testified she is a commercial property and exemption specialist for Defendant. She valued the property using the income approach and used the sales comparison approach to find a CAP rate to determine a price per unit (space). She testified that Defendant's records do not match Plaintiffs' number of spaces and was only able to confirm 63 available spaces. Bauer selected six comparable sales with CAP rates of 4.8 to 8.15. Comparable 1 is a 61-unit class "C" park known as Trailer Villa in Sweet Home that sold in November 2021 for $3.465 million. She did not know the actual income and expenses, but projected those figures and estimated an average rent of $457 per space. (Ex A at 1.) Comparable sales 2 and 5 were 91 and 61-units respectively that sold in Roseburg in late 2021 for $4.196 million and $3.15 million respectively. Comparable sales 3 in Creswell, 4 in Toledo, and 6 in Madras had 69, 29, and 56 spaces that sold near the assessment date for $4.319 million, $1 million, and $2.85 million respectively. Expenses ranged from a low of 32 percent to a high of 53 percent. She found the average CAP rate was 6.1 percent. Bauer determined the subject's indicated value by average price per space of $53,022. (Ex A at 1.) Using that figure the value of the subject property was $3,340,386. Despite this conclusion of value being much higher than the tax roll value, she asserted Defendant's perspective is to sustain the current roll value.

Bauer presented a mobile home park space in Sweet Home advertised in June 2023 at $550 for a double-wide space to show that rent prices were rising. Bauer calculated the value of the subject property using the income approach by assuming rents were $425 per month for 63 units. She subtracted 5 percent for vacancy, 51 percent for operating expenses, and found a NOI of $148,979. Dividing the NOI by the CAP rate, Bauer found an indicated value using the

---

[1] Average gross income was $242,184 and average expenses were $172,973.

income approach of $2,442,278.[2]

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2022-23 tax year. As the party seeking affirmative relief, Plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Once evidence of value has been presented by both parties, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

"Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, 2003 WL 21263620 at *2 (Or Tax M Div, Mar 26, 2003) (citation omitted). "Real market value" is defined as:

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1). The assessment date for the 2022-23 tax year is January 1, 2022. ORS 308.007; ORS 308.210.

---

[2] This corrects a slight math error.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *[.]" ORS 308.205(2). The three approaches to value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308-0240(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in each case. *Id.* Here, both parties relied on the income approach and used the sales comparison approach to determine a CAP rate. In considering an income producing property such as a mobile home park, the court finds that a hypothetical purchaser would likely rely on the income approach as the best indicator of value.

The income approach to valuation "measures the present value of the anticipated future stream of income attributable to [an] operating property, by discounting the [property's] anticipated cash flows to present value using a capitalization rate that reflects [an owner's] costs of investment." *Delta Air Lines, Inc. v. Dept. of Rev.*, 328 Or 596, 603, 984 P2d 836 (1999). Typically, in this type of case the parties present hypothetical market-based income and expenses because the court attempts to measure the value of a property without consideration of value attributable to a particular taxpayer's business skill. *See e.g. BDC/Bend SPE, LLC v. Deschutes County Assessor*, TC-MD 210180R, 2023 WL 155125 (Or Tax M Div, Jan 11, 2023). However, actual income and expenses may be considered by the court. *Multnomah County v. Dept. of Rev.*, 4 OTR 383 (1971).

A.      *Gross Income*

Plaintiff presented five years of actual income and expenses that demonstrates a consistent pattern. Plaintiffs reported annual gross income increased over time since 2017 from $218,061 to $252,571 which matches expectations in an appreciating market, although an

additional report shows annual rents were frozen from 2020-22 at $258,240. (Ex 1 at 108-09.) Defendant presented a much higher estimation of income based on advertised prices, CAP rates of comparable properties, and per unit (space) averages. Bauer's June 2023 mobile home park space advertisement is not persuasive as it is on a solicitation for a double-wide space and dated 16 months after the assessment date. Other comparables appear to be in much superior condition (class "B"). The most compelling comparable sale should be the November 2021 sale of Trailer Villa for $3,465,000. Trailer Villa is located down the street from the subject property and is also a class "C" property. Anderson presented only vague reasons for ignoring this comparable while Bauer did not obtain actual income, expenses, or the CAP rate. Bauer's extraction of NOI for that property is problematic because if she is correct about the 6.1 percent CAP rate, the value computation would result in a NOI of $211,365 ($3,465,000 x .0061). That NOI almost equals Plaintiff's actual gross income figures, without even considering expenses, which the parties assert is between 51 and 74.5 percent. The court, unfortunately, finds this comparable sale data inconclusive. Ultimately, the court finds that Plaintiffs' actual gross income of $258,240 more persuasive than Defendant's projected gross income.

B.      *Expenses*

Plaintiffs' stated expenses at 74.5 percent is very high as compared to the average expenses derived from Defendant's selection of comparable properties. Anderson presented hearsay information from Plaintiffs that expenses are high because of the water line issue which they lack resources to immediately fix. Anderson did not present any other explanation for the high maintenance costs. The court sees the high expense issue as a problem mostly peculiar to Plaintiffs as business owners and not necessarily an attribute of the subject property. A hypothetical and prudent purchaser of the subject property would resolve the issue not by

accepting continuing higher expenses, but by discounting the purchase price by the cost of the urgent repairs, $71,0000, and making those repairs from the start. That strategy would immediately reduce continued repair expenses over the life of the property. Subtracting a majority of the repairs which would be unneeded if the water line repairs were done, would remove almost $60,000 in expenses and would lower the expense percentage to approximately 53 percent. That figure is more in line with the data supplied by Defendant. Subtracting the repairs from Plaintiffs' 2022 profit statement is almost a perfect match to Defendant's expense percentage data.

C.      *CAP rate*

Determination of the exact CAP rate is challenging. The parties' numbers are relatively close – 7 and 6.1 percent respectively. Plaintiff uses a very small number of data points to find a CAP rate. Defendant uses a larger number of data points; however, some of the properties are in a different class than the subject property. Because a sale of the subject property would likely involve the infusion of a significant amount of immediate cash, the court is persuaded that a potential purchaser would demand a higher return. Thus, the court finds Plaintiff's higher CAP rate of 7 percent more persuasive.

## III. CONCLUSION

The court finds the value of the subject property as follows: gross income $258,240 minus expenses at 53 percent ($136,867) results in a NOI of $121,372, divided by a CAP rate of 7 percent, minus immediate repair costs of $71,000, yields a total real market value of $1,662,885.

/ / /

/ / /

Now, therefore,

IT IS THE DECISION OF THIS COURT the total real market value of the subject

properties, tax accounts 238721, 238705, 238713, and 238697, is $1,662,885.

Dated this _____ day of May, 2024.


_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*


*This document was signed by Magistrate Richard Davis and entered on May 7, 2024.*